UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| B. J. TIDWELL INDUSTRIES, INC. d/b/a CARDELL KITCHEN & BATH CABINETRY, | § § § § | |
| Plaintiff/Counter-Defendant, | § § | |
| v. | § § | CIVIL ACTION NO. |
| DIVERSIFIED HOME PRODUCTS, INC., JIM HINDMAN and IRENE CUELLAR, | § § § § § | SA-06-CA-0264 FB (NN) |
| Defendants/Counter-Plaintiffs. | § | |

**ORDER DENYING MOTIONS TO EXCLUDE**

This order addresses the pending motions to exclude experts.[1] I have authority to consider the motions under the district court's order of referral.[2] After considering the motions and the pleadings on file, I deny the motions.

**Background of the Case**

This lawsuit arose from a dispute between a cabinet manufacturer and its customer/distributor. Plaintiff B.J. Tidwell Industries, Inc., d/b/a as Cardell Kitchen and Bath Cabinetry (Cardell), manufactures cabinets. Diversified Home Products, Inc. (Diversified), supplies kitchen and bath cabinets to homebuilders and contracted with Cardell to purchase cabinets. Cardell sued Diversified in state court as an action on a sworn account. Diversified and defendants Jim Hindman and Irene Cuellar removed the lawsuit to this court as a diversity

---

[1]Docket entry #s 72 & 75.

[2]Docket entry # 50.

case. The defendants subsequently filed counter-claims against Cardell for breach of contract, misrepresentation and violation of the Tennessee Consumer Protection Act.[3] After receiving a copy of Dr. Gregory Faulk's report from Diversified, Cardell moved to exclude Dr. Faulk's testimony. Cardell designated Gerald Hill as a rebuttal expert. Diversified then moved to exclude Hill's testimony.

### Whether Dr. Faulk Is Qualified to Provide Valuation Opinions

Diversified alleges that Cardell failed to deliver conforming products in a timely manner, causing a number of homebuilders to end their relationship with Diversified and resulting in economic loss to Diversified.[4] Diversified designated Dr. Faulk as its expert to testify about the valuation of the economic loss.[5] Cardell first challenges Dr. Faulk's qualifications to provide valuation opinions. Cardell complains that Diversified has not shown that Dr. Faulk is uniquely qualified to testify about the valuation of a cabinet distribution business like Diversified. Cardell further complains that the majority of Dr. Faulk's opinions have been about the valuation of personal injury economic losses.

Rule 702 of the Federal Rules of Evidence provides for the admissibility of expert testimony if it will "assist the trier of fact to understand the evidence or to determine a fact in issue," and "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." The rule further provides that a witness may be

---

[3]Docket entry # 7.

[4]Docket entry # 7, p. 8.

[5]Docket entry # 80.

qualified as an expert "by knowledge, skill, experience, training, or education. . . ."[6] Under this rule, "an expert may be qualified on any of the five bases listed. A witness therefore can qualify as an expert even though he lacks practical experience, provided that he has received suitable training or education or has otherwise gained the requisite knowledge or skill."[7] The absence of hands-on experience with the particular industry is relevant to the determination whether to accept a witness as an expert, but it is not determinative.[8] The party offering the expert must prove by a preponderance of the evidence that the proffered testimony satisfies the requirements for expert testimony.[9]

      Diversified has shown that Dr. Faulk is qualified by knowledge, skill, experience, training, or education. Dr. Faulk has a bachelor's degree in mathematics, a master's degree in business administration, and a doctorate degree in finance.[10] Dr. Faulk's master's program included courses relevant to corporate valuation—specifically, managerial accounting, accounting for financial decision-making and financial management.[11] Likewise, Dr. Faulk's doctorate program included courses in advanced financial management, the theory of finance, and a seminar in corporate finance.[12] Dr. Faulk has taught finance and corporate valuation at

---

[6] FED. R. EVID. 702.

[7] *Lavespere v. Niagara Mach. & Tool Works*, 910 F.2d 167, 176-7 (5h Cir. 1990).

[8] *Lavespere*, 910 F.2d at 177.

[9] *See Mathis v. Exxon*, 302 F.3d 448, 459-60 (5th Cir. 2002).

[10] Docket entry # 73, exh. 2, exh. A (Dr. Faulk's resume attached to Dr. Faulk's affidavit).

[11] Docket entry # 73, exh. 2 (Dr. Faulk's affidavit).

[12] *Id*.

Belmont University.[13]  Before teaching, Dr. Faulk was a senior vice president at Southeast National Bank, where he served on the bank's loan committee and assessed the capacities of businesses and individuals to repay loans.[14]  Even though Dr. Faulk has not previously done a valuation of a cabinet distribution business, he has the knowledge, skill, experience, training, or education to enable him to conduct such a valuation.

### Whether Dr. Faulk's Testimony Is Reliable

Cardell next challenges the reliability of Dr. Faulk's testimony.  Cardell complains that Dr. Faulk relied on summary spreadsheets—prepared by Diversified's employees—that include builders that Diversified alleges stopped doing business with Diversified because of Cardell's actions.  Cardell maintains that Dr. Faulk's opinions are unreliable because Dr. Faulk did not verify the authenticity of the data before determining his valuation of Diversified's economic loss.  Cardell challenges the assumptions that Dr. Faulk used in valuating Diversified's economic loss—that the builders on Diversified's spreadsheets would have continued doing the same level of business with Diversified for the next three to five years and that Diversified's marginal revenue on sales was 20%.  Cardell maintains the assumptions are erroneous.

Rule 703 of the Federal Rules of Evidence provides that an expert's opinion is generally admissible so long as the facts and data underlying that opinion are of a type reasonably relied on by experts in the field.[15]  Dr. Faulk has attested that he relied on summary spreadsheets prepared by Diversified's employees containing information on Diversified's customers, invoices, billing

---

[13]Docket entry # 73, exh. 2, exh. A (Dr. Faulk's resume attached to Dr. Faulk's affidavit).

[14]Docket entry # 73, exh. 2 (Dr. Faulk's affidavit).

[15]See FED. R. EVID. 703.

and finance charges over the relevant time period.  He further attested that he reviewed Diversified's financial records for 2004 through 2006 and interviewed Diversified's employees. Dr. Faulk also attested that the information is the type of information that experts in his field normally and reasonably rely upon when performing a valuation.  Although Dr. Faulk did not attest that he verified the accuracy of the information he received from Diversified, it seems unreasonable to expect valuation experts to ascertain the accuracy of the financial information provided by their clients.  It seems reasonable for a business valuation expert to rely on information the client provides about its customers, invoices, billing, finance charges, and financial records in valuating a business's economic loss.  In essence, Cardell's motion seeks to challenge the truthfulness of Diversified's allegations that the builders on the spreadsheets stopped doing business with Diversified because of Cardell's actions.  The truthfulness of those allegations is relevant to the causation element of Diversified's breach of contract claim, not Diversified's damages.  Dr. Faulk is designated to testify about damages.  If Diversified is unable to prove that all of the builders on the list stopped doing business with Diversified because of Cardell's actions, it would be appropriate for Dr. Faulk to adjust his valuation.  Until that time, Dr. Faulk's valuation is not unreliable on grounds that he did not verify the accuracy of information provided by Diversified.

### Whether Hill's Testimony Should Be Excluded

After receiving Dr. Faulk's report, Cardell asked certified public accountant Gerald Hill to comment on Dr. Faulk's report.  In his expert report, Hill criticizes two aspects of Dr. Faulk's valuation.  First, Hill faults Dr. Faulk for not verifying the accuracy of the information he

received from Diversified.[16]  Hill explained that although the customer population in many damage cases is too extensive to personally contact customers, the customer population for Diversified's claim is small enough that Dr. Faulk should have contacted the customers that Diversified alleges stopped doing business with Diversified because of Cardell's actions—twelve builders on Diversified spreadsheets—before conducting his valuation.[17]  Second, Hill criticized Dr. Faulk for not considering Diversified's financial position.[18]  Hill opines that Diversified was grossly under-capitalized in 2004 when it began and that Diversified's financial position dramatically deteriorated.[19]

Diversified maintains that portions of Hill's testimony describing his conversations with Diversified's former customers should be excluded as inadmissible hearsay.[20]  Diversified maintains that Cardell cannot overcome the general rule against hearsay because the probative value of the hearsay is not substantially out-weighed by the prejudicial effect of the information and that the information does not constitute scientific, technical, or other specialized knowledge.

Rule 702 permits the admissibility of "scientific, technical, or other specialized knowledge" if it will "assist the trier of fact to understand the evidence."[21]  Hill's description of his process in evaluating Dr. Faulk's valuation is specialized knowledge because the subject

---

[16]Docket entry # 79, exh. 1.

[17]*Id.*

[18]*Id.*

[19]*Id.*

[20]*See* docket entry # 75.

[21]FED. R. EVID. 702.

matter is closely related to valuating businesses and is not within the common knowledge of the average layman.[22]  Hill's description of his discussions with former Diversified customers will assist the trier of fact in considering Dr. Faulk's opinion about the valuation of Diversified's economic loss because the evidence addresses the accuracy of Dr. Faulk's valuation.  The description demonstrates why the contacts are important in Hill's assessment of Dr. Faulk's valuation because the description undermines Diversified's position that the former customers on the spreadsheets stopped doing business with Diversified because of Cardell's actions.  If the builders on Diversified's spreadsheets stopped doing business with Diversified for reasons unrelated to Cardell's actions, Dr. Faulk's valuation is over-stated because the valuation is based on all of the builders on the spreadsheets.  Although Hill's description of his conversations with Diversified's former customers may constitute hearsay, "[e]xpert witness testimony is a widely-recognized exception to the rule against hearsay testimony.  It has long been the rule of evidence in the federal courts that an expert witness can express an opinion as to value even though his opinion is based in part or solely upon hearsay sources."[23]  The best way for Cardell to defend against Diversified's counterclaim is producing Diversified's former customers at trial, but Cardell has discussed why that is unlikely.[24]  No basis exists for excluding Hill's testimony at this point.

---

[22]*See Faircloth v. Lamb-Grays Harbor Co.*, 467 F.2d 685, 694 (5th Cir. 1972) (explaining when expert testimony is admissible).

[23]*United States v. Williams*, 447 F.2d 1285, 1290 (5th Cir. 1971).  *See LaCombe v. A-T-O*, 679 F.2d 431, 436 n.5 (5th Cir. 1982) (relying on the same rule in a civil case).

[24]*See* docket entry # 79, pp. 9-10.

**Conclusion and Order**

Because Diversified has shown that Dr. Faulk has the knowledge, skill, experience, training, or education to conduct a valuation of a cabinet distribution business and that Dr. Faulk's testimony is reliable, I DENY Cardell's motion to exclude (docket entry # 72). Because Cardell has shown that Hill's testimony about his contacts with the former customers on the spreadsheets formed the methodology of an opinion that will assist the jury in considering Dr. Faulk's valuation of Diversified's economic loss, I DENY Diversified's motion to exclude (docket entry # 79).

**SIGNED** on October 19, 2007.

_____
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE